## O'QUINN v STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION
### Case No. 85-25736 CO
Seventeenth Judicial Circuit, Broward County

July 30, 1987

### APPEARANCES OF COUNSEL

**Lauri Waldman Ross, Kelly, Black, Black, Byrne & Beasley, P.A.,** for plaintiff.

**Judy Rice,** state of Florida, Department of Transportation, for defendant.

### OPINION OF THE COURT

JOSEPH E. PRICE, JR., Circuit Judge.

## ORDER DETERMINING LIABILITY IN FAVOR OF THE PLAINTIFF

This inverse condemnation action was tried to the Court non-jury on July 1, 1987. Plaintiff sought a declaration from the Court that she had an advantageous business lease which was "taken" by the Florida Department of Transportation ("DOT") without the payment of "full compensation," in violation of the Florida Constitution, Article X, § 6. Having listened carefully to the testimony presented, examined the trial exhibits, and weighed the credibility of the witnesses, the Court has determined that the Plaintiff is entitled to such a decree and that it is warranted under Florida law.

### Findings of Fact

The Plaintiff Sue O'Quinn, lessee, entered into a lease with her landlord, Ted Twist, on August 28, 1982. The lease was for a five year term for premises described as:

Lot 15, except the West 25.34 feet of the North 114 feet thereof; the West 63 feet and the North 128.39 feet of the East 47.0 feet of Lot 16; the South 81.5 feet of Lot 7 and the South 81.5 feet of the East 84.66 feet of Lot 8 of Geraldine Farms, according to the plat thereof, recorded in Plat Book 21, at page 6, of the Public Records of Broward County, Florida.

Containing 1.342 acres, more or less.

The premises were more commonly known as 4451 State Road 84, and Plaintiff owned and operated a bar on the premises known as "Allene's Bar."

In approximately 1980, the DOT announced that it would be acquiring property in connection with the construction of I-595. In 1982, the DOT chose an alternative which required the acquisition of parcel 110, the parcel on which Allene's Bar was located. The DOT thereafter notified both Mr. Twist (the fee owner) as well as the Plaintiff lessee that the property would be condemned.

The DOT recognized that Plaintiff had an interest in the property to be acquired by its preparation of a quit claim deed for Plaintiff's execution on February 16, 1984. The Plaintiff never executed such quit claim deed and, instead, hired an attorney to obtain for her the full compensation required by law for her leasehold interest.

In early 1984, the DOT commenced extensive negotiations to purchase Mr. Twist's feehold without the institution of condemnation proceedings. Sometime in mid-1984, the DOT entered into a course of conduct designed to obtain Plaintiff's leasehold without paying for it.

**55**

Mr. Twist had previously found the DOT's offer for his property to be unacceptable. He thus made a counter-offer to the DOT, demanding $516,000 for his fee interest in the property. The DOT agreed to pay the money, *but made it a condition of the settlement* that Twist execute a document entitled:

Assignment of Lease Including, Without Limitation, *Assignment of Apportionment Rights of Lessee* (emphasis added).

This instrument, executed by Twist on June 15, 1984, provided in pertinent part that it was "in settlement of a pending, or contemplated, condemnation of the lease/leasehold interest," and that it was "complete and irrevocable." At no time did the Plaintiff consent to the purported assignment of her apportionment rights as a lessee. At no time did the DOT pay Plaintiff any money for her leasehold.

While the DOT attempted to justify its conduct at trial on the basis that Plaintiff had a "market rental" and was entitled to no compensation because her lease was not "advantageous," the evidence was to the contrary. On May 11, 1984, the DOT made the internal determination that Plaintiff's proposed compensation did not appear to be "justifiable." This determination was made *before* the DOT had received any market rental study evaluating the Plaintiff's lease. The market rental study subsequently commissioned by the DOT from its in-house appraiser merely rubber-stamped its prior conclusion. In fact, the DOT appraiser from whom the study was commissioned, simply pulled a list of rentals from her file, and made no independent evaluation as to whether those rental properties were comparable. The rentals relied on ranged over several municipalities and had little in common. The only bar property on which the DOT relied had a 1977 rental, and was condemned by the DOT before this trial commenced.

At the same time, the DOT claimed Plaintiff's lease to be valueless, its records confirmed knowledge that new rental sites were beyond Plaintiff's ability to pay and in excess of her rent under the lease. Plaintiff confirmed this at trial.

While Plaintiff moved off the property in May, 1984 (prior to execution of the purported assignment), she did so in good faith based on (1) the DOT's representations that her property would be condemned; (2) her accurate perception that Twist was vacating the premises; and (3) the adverse impact the contemplated condemnation was having on her business. Plaintiff was not required to remain on the premises indefinitely and pay the DOT rent under these circumstances. *See Coleman v. Escambia County*, 405 So.2d 227 (Fla. 1st DCA 1981). In light of the DOT's notice to Twist to vacate by July 20, the Court

56

finds it highly unlikely the DOT would have permitted Plaintiff to remain on the premises, even if she so chose.

### Conclusions of Law

The Florida Constitution, Article X, Section 6, mandates that "No private property shall be taken except for a public purpose and with full compensation therefor. . . ." A lessee for a term of years is undeniably an owner in the context of condemnation proceedings and is entitled to compensation for the value of its leasehold. *Carter v. State Road Dept.*, 189 SO.2d 793 (Fla. 1966); *State Road Department v. White*, 161 So.2d 829 (Fla. 1964).

This case does *not* involve the elusive question of whether a state regulation is so extreme and confiscatory as to constitute a "taking" under the Constitution. *See. e.g., Florio v. City of Miami Beach,* 425 So.2d 1161 (Fla. 3d DCA), *pet. for rev. den.,* 434 So.2d 887 (Fla. 1983). Here, the Court is presented with a written conveyance which *on its face* purports to obtain all of the Plaintiff's rights without her consent, and which gives her nothing in return.

"[A] radical curtailment of a landowner's freedom to make use of or ability to derive income from [her] land may give rise to a taking within the meaning of the Fifth Amendment, even if the Government has not physically intruded upon the premises or acquired a legal interest in the property." *Kirby Forest Industries, Inc. v. United States,* 467 U.S. 1, 14, 104 S.Ct. 2187, 81 L.Ed. 2s 1 (1984). The written assignment at issue clearly and unequivocally purported to take all of the Plaintiff's apportionment rights under the lease and convey them to the DOT, and to divest the Plaintiff of any future rights.

In *Pinellas County v. Brown,* 450 So.2d 240 (Fla. 2d DCA 1984), an analogous case, Pinellas County entered into a long-term lease agreement with Pinellas Industrial Airpark, Inc. (PIA). The lease provided that it could not be assigned by the lessee without prior written landlord consent. It further provided that such consent could not be unreasonably withheld. Plaintiff Brown entered an agreement to purchase the lease and sued Pinellas County in inverse condemnation after the latter's consent to the assignment was withheld. The trial court's ruling in Brown's favor was affirmed on appeal. By necessary implication, the Second District held that the unreasonable withholding of consent by the County to the assignment could constitute a "taking" as a matter of law.

The facts in the present case are even more compelling. The DOT at all times knew about Plaintiff's leasehold interest and knew that she

**57**

would not release her interest without payment. Notwithstanding that knowledge, DOT seized upon a circuitous and indirect method of appropriating Plaintiff's leasehold interest for the sole purpose of avoiding payment of "full compensation." Indeed, the avowed purpose of obtaining such assignment was to save the DOT money it would otherwise be compelled to pay. It is clear to the Court that a "taking" has occurred and that the Plaintiff is entitled to "full compensation" under the Florida Constitution.

This Cause will be set on the Court's jury calendar for a jury trial on the amount of compensation to which Plaintiff is entitled, pursuant to § 73.071, Fla. Stats. (1985).

The Court further reserves jurisdiction to determine the amount of statutory attorneys' fees and costs due the Plaintiff.

DONE and ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 30th day of July, 1987.